IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
--- Charleston Division ---

Luis Pachuca Romero;[1] Anayeli Garcia, each individually and together on behalf of all others similarly situated as Plaintiff Class,

Plaintiffs,

v.

National General Insurance Company; Integon National Insurance Company; Integon Indemnity Company; National General Insurance Marketing, Inc.; and Fuerza Latina Insurance LLC; and

Defendants.

Civil Action No. 2:22-cv-04667-DCN

Breach of Contract
Breach of Contract Accompanied by Fraudulent Act
Bad faith Refusal to Pay First and Third party benefits

Class action allegations

**Amended Complaint**

On January 3, 2023, certain defendants[2] submitted ECF 5, a motion to dismiss the state class action complaint they had removed to this court. This amended class action complaint is submitted as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B), as it is filed within 21 days of certain of the defendants having filed ECF 5.

**Nature of the Action**

This complaint alleges wrongful insurance practices by the defendants, and does so on behalf of both the individual plaintiffs and a class of similarly situated South Carolina residents.

[1] Luis Pachuca Romero's name is incorrectly spelled "Louis Pachuca Romero". The correct spelling is "Luis Pachuca Romero" as set forth in the caption above.

[2] In ECF 1 at p. 2 n.1, the removing defendants dispute service on National General Insurance Company by commercial delivery as not authorized in South Carolina. The removing defendants are incorrect. (a) Service by commercial delivery has been authorized in South Carolina since 2013 through SCRCP 4(d)(9), and (b) SCRCP 4(d) provides, "Voluntary appearance by defendant is equivalent to personal service." The point is moot.

Essentially, the defendants provide insurance to South Carolina drivers but when a claim is submitted, the defendants wrongfully ignore policy provisions which would support coverage and, independent of that, wrongfully deny coverage on grounds prohibited by state law thereby breaching the policy provision that the policy terms are "deemed amended to conform" to state law (e.g., ECF 5-2 at p. 50).

Using these routine practices, the defendants have wrongfully denied first and third-party claims for the plaintiffs and for other policy holders who reside in South Carolina.

The complaint seeks to end the defendants' wrongful business practices, recover damages for the named plaintiffs as well as for a class of all such insured drivers who, within the last three years, were denied insurance benefits due to the defendants' wrongful business practices and who resided in South Carolina as of the date of first filing, November 18, 2022.

**Parties and Jurisdiction**

1.	Plaintiff Luis Pachuca Romero ("Romero") is a citizen of a foreign state who resides in Berkeley County, South Carolina. Mr. Romero speaks a language other than English, and neither speaks nor reads English.

2.	Plaintiff Anayeli P. Garcia ("Garcia") is a citizen of a foreign state who resides in Berkeley County, South Carolina, in the same household as her natural father, Luis Romero. Garcia now holds, and has held at all times pertinent to this complaint, a valid South Carolina license.

3.	Defendant National General Insurance Company ("National") is a duly organized for-profit Missouri corporation having a principal place of business at 5630 University Parkway, Winston-Salem, North Carolina 27105, with a registered agent address of CSC-Lawyers Incorporating Services Company, 221 Bolivar Street, Jefferson City, Missouri 65101.  Under 28

U.S.C. § 1332(c)(1)(A), National is a deemed a citizen of the same foreign state as each of plaintiffs Romero and Garcia.

4. Defendant Integon National Insurance Company, ("Integon") is a duly organized for-profit Missouri corporation having a principal place of business at 5630 University Parkway, Winston-Salem, North Carolina, 27105, with a registered agent address of CSC-Lawyers Incorporating Services Company, 221 Bolivar Street, Jefferson City, Missouri 65101. Under 28 U.S.C. § 1332(c)(1)(A), Integon is a deemed a citizen of the same foreign state as each of plaintiffs Romero and Garcia.

5. Defendant Integon Indemnity Corporation, ("Integon Indemnity") is a duly organized for-profit Missouri corporation having a principal place of business at 5630 University Parkway, Winston-Salem, North Carolina 27105 and a registered agent address of CSC-Lawyers Incorporating Services Company, 221 Bolivar Street, Jefferson City, Missouri 65101. Under 28 U.S.C. § 1332(c)(1)(A), Integon Indemnity is a deemed a citizen of the same foreign state as each of plaintiffs Romero and Garcia.

6. Defendant National General Insurance Marketing, Inc., ("National Marketing") is a duly organized for-profit Missouri corporation having a principal place of business at 5630 University Parkway, Winston-Salem, North Carolina 27105 and a registered agent address of CSC-Lawyers Incorporating Services Company, 221 Bolivar Street, Jefferson City, Missouri 65101. Under 28 U.S.C. § 1332(c)(1)(A), National Marketing is a deemed a citizen of the same foreign state as each of plaintiffs Romero and Garcia.

7. A reference in this amended complaint to the "insurer defendants" is a reference to the defendants National, Integon, Integon Indemnity, and National Marketing.

8.  Defendant Fuerza Latina Insurance, LLC, ("Latina"), on information and belief, is a duly organized Georgia limited liability company having a principal place of business at 2830 Club Drive, Suite 5, Lawrenceville, Georgia 30044. Through its agents and employees located in a storefront at 113 College Park Road, Suite K, Ladson, South Carolina, Latina operated as an agent of the insurer defendant entities which sold the defendants' insurance policy to Mr. Romero.

9.  The insurer defendants have removed this action to the federal court on grounds of both diversity jurisdiction under the Class Action Fairness Act, maintaining that more than $5 million is at issue.

10. Pursuant to that removal, the defendants claim the court has jurisdiction of both the subject matter of this action and the parties. Yet

   a. under 28 U.S.C. § 1332(c)(1)(A), each of the insurers is a deemed a citizen of the same foreign state as each of plaintiffs Romero and Garcia, so not even minimal diversity exists, and

   b. even if minimal diversity existed, the home state exception of CAFA, 28 U.S.C. § 1332 applies to an action which concerns only South Carolina law and South Carolina residents within the class definition.

11. If the court has, or elects to assert, removal jurisdiction, venue is proper in the Charleston Division as the plaintiffs reside in this division and the business practices at issue took place primarily in the Charleston division.

**The Plaintiff Class**

12. As set forth in more detail below, the Plaintiff Class meets the requirements of Fed. R. Civ. P. 23 as to numerosity, commonality, typicality, and adequate representation.

13. The Plaintiff Class is an identifiable and finite class of individuals defined as all

individuals situated similarly to Romero and Garcia in the following respects:

    a. The class member's address in the records of the defendants reflects residence in South Carolina, and

    b. The class member had a policy of automobile insurance underwritten, sold and/or transacted by any combination of the defendants on or after November 18, 2019 to the present, which policy provided insurance coverage for property loss and injury; and

    c. The class member performed his or her obligations and responsibilities under the terms of the Policy contract, including without limitation, payment of premiums and timely Notices of claims,

    d. The class member either:

        i. Such as Romero, was explicitly identified as an insured by that policy of insurance; or

        ii. Such as Garcia (who drove with Romero's permission), was explicitly included as an insured by one or more provisions of that policy of insurance, or

        iii. Such as Garcia (who was and is a child who resided in Romero's household), was implicitly included in a policy "deemed amended" by the mandatory provisions of S.C. Code § 38-77-30, which defines who is an insured to include a relative "while resident of the same household;" and

    e. Such as Romero and Garcia, suffered a property loss or injury during the period of their policy; and

    f. Such as Romero and Garcia, made a claim for a covered loss under that policy of

      insurance; and

    g. Such as Romero and Garcia, was denied coverage for first party loss based on "undisclosed driver," and/or

    h. Such as Garcia, was denied coverage for third-party loss based on "undisclosed driver," and

    i. Who has not previously had any similar claim adjudicated, resolved or released.

14. That identifiable class of South Carolina residents who were denied coverage is expected to be in the hundreds if not the thousands, too many to be joined individually, and will be ascertainable from the records of the defendants. From that class, those wrongfully denied benefits by the wrongful practices of the defendants as alleged below can then be identified.

15. The claims, defenses and parties in this class action comply with Rule 23. Joinder of all members of the class is impracticable. Questions of law and fact are common to all members of the Plaintiff class as the defendants have a routine practice of failing to properly apply state law to their policies and to interpreting their policies. The claims and defenses of the class representative are the same or typical of the claims and defenses of the class as a whole, *namely* – the insurer defendants' unlawful denial of insurance benefits due under a policy on the grounds of an "undisclosed driver" in violation of South Carolina law, when other policy provisions or terms imposed by state law compel coverage.

16. Romero and Garcia, as class representatives, will each fairly and adequately protect the interest of the class. The insurer defendants contend that the amount in controversy exceeds $5 million. The claims of Garcia and Romero exceed $17,000.

**Factual Allegations**

17. At all relevant times, the insurer defendants marketed, sold, issued and transacted insurance Policies in South Carolina to South Carolina residents, including the Plaintiffs.

18. Romero was sold the policy through Latina in October 2021.

19. At all relevant times, Romero and Garcia were insureds under an automobile insurance policy procured, underwritten, marketed, sold, issued and transacted by the insurer defendants in South Carolina ("Policy").

20. At all relevant times, Romero and Garcia paid all premiums and performed all their obligations and responsibilities under their respective Policy within South Carolina.

21. The Romero Policy provides coverage for property damage and injury. Garcia is properly covered under her father's policy because (a) Garcia drove with Romero's permission and (b) by operation of South Carolina law, because Romero and Garcia are relatives (being father and daughter) who reside within the same household.

22. On December 18, 2021, Romero was a passenger in one of the vehicles insured under his policy. Garcia was driving the vehicle with Romero's permission. At all relevant times, Garcia operated the vehicle with permission from Romero and is therefore a permissive driver under the Policy.

23. Garcia was an insured under Romero's policy both by operation of state law as a resident of Romero's household and because she was driving with Romero's permission.

24. At approximately 5:35 p.m., Garcia, Romero, and two other family members in the car were involved in a collision while driving west on Azalea Square Boulevard in Summerville, South Carolina.

25. The vehicle Garcia was driving is a covered automobile listed on Romero's insurance policy.

26. Property loss and injury resulted from the collision in that the vehicle Garcia was driving sustained property damage and Garcia's passengers sustained injury.

27. After the collision, Romero and Garcia timely filed notices of claims against the Policy ("Notice") by and through one or more of the defendants for insurance coverage to redress their covered injuries and property loss.

28. The insurer defendants received the claim Notice filed by Romero and Garcia.

29. By December 20, 2021, two days after the collision, the insurer defendants denied Plaintiffs' claims, or failed, neglected or otherwise refused to pay Plaintiffs' claims, in breach of the Policy terms and in violation of South Carolina law. Despite the policy provision covering anyone driving with Romero's permission, and despite the policy provision by which state law is deemed to amend the policy, the claim was denied claiming Garcia was an "undisclosed driver," as reflected in the letter attached at page 17 of ECF 1-1, Exhibit A to the original complaint and incorporated into this amended complaint pursuant to Fed. R. Civ. P. 10(c).

30. South Carolina mandates and specifies a form for insurers to use to have a policy holder exclude a particular driver from policy coverage. No excluded driver form was ever completed by Romero to exclude his daughter, Garcia, from policy coverage.

31. As a result of the December 2021 collision, in May 2022, Garcia was served a subrogation demand from USAA Casualty Insurance Company ("USAA") to reimburse USAA for losses its insured sustained in the 2021 collision. That demand appears at pages 19 to 23 of ECF 1-1, Exhibit B to the original complaint and incorporated into this amended complaint pursuant to Fed. R. Civ. P. 10(c).

32. Also as a result of the December 2021 collision, on or about November 3, 2022, Garcia was sued in the Berkeley County Court of Common Pleas by the driver and passengers who collided with Garcia and have claimed property damage and injuries sustained. The case is number 2022-CP-08-02678).

33. On the same theory of undisclosed driver, and despite the provisions of Romero's policy and the terms imposed by state law, each of which independently include Garcia as an insured, the insurer defendants refused, and continue to refuse, to properly respond to and provide coverage for the third-party claims against Garcia.

34. The defendants continue to refuse to pay, or otherwise timely pay, the lawful claims under the Policy for property damage and injury.

35. The insurer defendants' insurance Policies with the plaintiffs are subject to South Carolina law, including without limitation, S.C. Code §§ 36-61-10 and 38-77-10, *et. seq.*

36. S.C. Code § 36-61-10 states in relevant part:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

37. S.C. Code § 38-77-30 states in relevant part:

> "Insured" means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

38. The insurer defendants' *joint and several* denial of Garcia's claim constitutes a breach of the parties' Policy contract terms, a breach of the covenant of good faith and fair dealing and a violation of S.C. Code §§ 36-61-10 and 38-77-30.

39. On information and belief, as discovery will show, Defendants *joint and several* denials of the similarly situated claims of the plaintiff class member claims on the same grounds constitutes breach of the parties' Policy contract terms, breach of good faith and fair dealing and a violation of S.C. Code §§ 36-61-10 and 38-77-30.

40. The insurer defendants' conscious disregard of the individual Plaintiffs' and the class members' contractual rights under their respective Policies, and acts and omissions in the particulars set forth in this complaint, constitute breach of contract, breach of the covenant of good faith and fair dealing and violations of S.C. Code §§ 36-61-10 and 38-77-30.

41. As a direct, proximate and foreseeable result of the insurer defendants' unlawful denial of insurance coverage benefits when due, the plaintiffs sustained pecuniary and non-pecuniary damages and financial losses for which they are entitled to recover their actual, special, and punitive damages, attorneys' fees, and other and further relief.

FOR A FIRST CAUSE OF ACTION: COUNT I
Breach of Contract and
Breach of Good Faith and Fair Dealing
(against the insurer defendants)

42. Plaintiffs repeat, reallege and incorporate by reference the preceding allegations set forth in this complaint as if the same were fully set forth herein.

43. At all relevant times, Plaintiffs and insurer defendants entered into a valid, binding and enforceable Policy contract for good and valuable consideration which was in full force and effect at claim denial.

44. The Policy contract is subject to South Carolina law and by its own terms is deemed amended to conform to South Carolina law.

45. The terms of an insurance policy must be construed most liberally in favor of the insured. The insurer defendants failed both to conform the plaintiffs' policy in favor of the insured and failed to conform the policy to comply with South Carolina law.

46. The Policy contract provides insurance coverage for the Plaintiffs' property damages and injury resulting from a Vehicle collision of the type and kind set forth in this complaint.

47. At all relevant times, the Plaintiffs performed their obligations and responsibilities under the terms of the Policy contract, including without limitation, payment of premiums and timely Notices of claims.

48. The insurer defendants, or one or more of them, neglected, failed or otherwise refused to honor their obligations and responsibilities under the respective Policy contract(s) by non-payment of Policy benefits due under the Policy contact on the basis of an "undisclosed driver," in violation of South Carolina law.

49. At all relevant times, the insurer defendants owed to the plaintiffs an implied duty of good faith and fair dealing to deal fairly with the plaintiffs in good faith arising out of the Policy contract – *namely, inter alia,* to underwrite, issue and perform their Policy contract obligations compliant with South Carolina law, which the insurer defendants did not.

50. The insurer defendants' knowing and willful acts and omissions in denying coverage benefits due and owing the plaintiffs under the Policy on the basis of "undisclosed driver" status constitutes a breach of the implied duty of good faith and fair dealing inherent in every South Carolina contract.

51. The plaintiffs plead foreseeable special damages in such amounts as to be determined in the plaintiffs' investigation and discovery, but in all events not less than $15,000

per Policy violation. The plaintiffs' foreseeable special damages will become more definite during Plaintiffs' investigation and discovery.

52. As a direct, proximate and foreseeable result of the insurer defendants' contract breach, and breach of good faith and fair dealing, the plaintiffs sustained pecuniary and non-pecuniary damages, including without limitation, property losses, injury, medical expenses, subrogation claims and attorney fees and costs, for which the insurer defendants are liable.

FOR A SECOND CAUSE OF ACTION: COUNT II
Breach of Contract and
Breach of Good Faith and Fair Dealing
(against the insurer defendants)

53. Plaintiffs repeat, reallege and incorporate by reference the preceding allegations set forth in this complaint as if the same were fully set forth herein.

54. As alleged above, third-party claims were made against Garcia.

55. The insurer defendants wrongfully denied those third-party claims as to coverage and the duty to defend Garcia and Romero, as alleged above as to denial of first-party claims.

56. The damages to the plaintiffs from third party claims were foreseeable and constitute special damages in such amounts as to be determined in the plaintiffs' investigation and discovery, but in all events not less than $15,000 per Policy violation. The plaintiffs' foreseeable special damages continue to accrue and will become more definite during plaintiffs' investigation and discovery.

57. As a direct, proximate and foreseeable result of the insurer defendants' contract breach, and breach of good faith and fair dealing, the plaintiffs sustained pecuniary and non-pecuniary damages, including without limitation, property losses, injury, medical expenses, subrogation claims, third-party claims and attorney fees and costs, for which defendants are liable.

FOR A THIRD CAUSE OF ACTION
Breach of Contact Accompanied by Fraudulent Act
(against the insurer defendants)

58.     Plaintiffs repeat, reallege and incorporate by reference the preceding allegations set forth in this complaint as if the same were fully set forth herein.

59.     At all relevant times, the plaintiffs and the insurer defendants entered into a valid, binding and enforceable Policy contract for good and valuable consideration in the State of South Carolina.

60.     The insurer defendants engaged in fraudulent false and misleading statements, acts and omissions, in wrongfully and unlawfully denying the Plaintiffs' insurance coverage due under the Policy and in wrongfully denying third party claims brought against the plaintiffs.

61.     The insurer defendants' false and misleading statements, acts and omissions accompanying their contract breach in the particulars set forth in this complaint – *namely,* by the insurer defendants' knowing, willful and wanton wrongful denial of coverages for Plaintiffs' covered losses when the insurer defendants' knew, or should have known, (a) interpreting the policy favorably to the insured, as required by South Carolina law, would provide coverage, and (b) mandatory provisions of South Carolina law mandated coverage. Coverage denial on each ground constitutes breach of contact accompanied by a fraudulent act.

62.     As direct, proximate, and foreseeable result of the insurer defendants' breach of contract accompanied by fraudulent representations, acts and omissions, the plaintiffs sustained substantial pecuniary and non-pecuniary losses as set forth herein, and in an amount to be determined at trial.

FOR A FOURTH CAUSE OF ACTION
Bad Faith Refusal to Pay Benefits
under an Insurance Policy and Improper Claims Practices
(against the insurer defendants)

63. Plaintiffs repeat, reallege and incorporate by reference the preceding allegations set forth in this complaint as if the same were fully set forth herein.

64. In addition to the breach of contract claims alleged above, the insurer defendants' wrongful and unlawful conduct in the particulars set forth in this complaint and below constitute the tort of bad faith refusal to pay first-party and third-party benefits under an insurance policy in violation of South Carolina law, *namely* –

    a.    Knowingly misrepresenting to insureds or third-party claimants pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages;

    b.    Refusing to interpret the policy provisions in the light most favorable to the insured, as South Carolina law requires;

    c.    Refusing to honor claims submitted for first-party benefits within thirty (30) days of reasonable proof of claim;

    d.    Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies, including third-party claims arising under liability insurance policies;

    e.    Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims, including third-party liability claims, arising under its policies;

    f.    In unreasonably denying payment of the plaintiffs' claims in violation of

S.C. Code §§ 38-59-20 and 38-59-230;

g. Not attempting in good faith to effect prompt, fair, and equitable settlement of claims, including third-party liability claims, submitted to it in which liability has become reasonably clear;

h. In failing to communicate to the Plaintiffs any justifiable basis for denying Plaintiffs' lawful claims;

i. In failing to attempt in good faith to effect a fair, prompt and equitable settlement of the plaintiffs' lawful claims;

j. Compelling policyholders or claimants, including third-party claimants under liability policies, to institute suits to recover amounts reasonably due or payable with respect to claims arising under its policies by offering substantially less than the amounts ultimately recovered through suits brought by the claimants or through settlements with their attorneys employed as the result of the inability of the claimants to effect reasonable settlements with the insurers;

k. In failing to fully investigate and review the plaintiffs' claims as against the Policies to determine appropriate coverages due the plaintiffs;

l. In refusing to honor the claims as a leverage to force the plaintiffs to concede money, or otherwise give-up, their rights under the Policies;

m. In carrying on in a pattern of deceitful representations, acts and omissions, and in reckless disregard of the plaintiffs' legal rights, in a deliberate scheme to side-step the insurer defendants' obligations and responsibilities under the Policy to pay Policy claims due the plaintiffs.

65. The insurer defendants are each and together sophisticated businesses learned and experienced in the underwriting, marketing, sale and issuance of insurance and indemnity products and services to the public, like Plaintiffs; and, therefore, the insurer defendants knew, or should have known, of South Carolina's insurance laws and regulations and that their wrongful and unlawful denial of coverage benefits when due was in fact illegal, outrageous and would cause financial hardship and losses to their insureds, at substantial loss to the insureds, solely for the insurer defendants' financial gain.

66. As a direct, proximate, and foreseeable result of the insurer defendants' bad faith refusal to pay first-party benefits under an insurance policy by fraudulent representations, acts and omissions, the plaintiffs sustained substantial pecuniary and non-pecuniary losses as set forth herein, and are entitled to recover their actual, special and punitive damages in such amounts to be determined at trial, as well as attorney fees pursuant to S.C. Code § 38-59-40.

## FOR A FIFTH CAUSE OF ACTION
Negligence by Latina
Breach of Assumed Duty
(against defendant Latina)

67. Allegations above, other than the class allegations, are incorporated into this cause of action as if fully stated. This cause of action is stated for Romero and Garcia individually against Latina, not on behalf of the class.

68. Latina serves the Spanish-speaking community in Ladson from, as alleged above, a storefront at 113 College Park Road, Suite L, in Ladson, South Carolina.

69. Latina is an agent of the insurer defendants.

70. Romero neither speaks nor reads English. Romero depended on Latina to meet his insurance needs, a duty which Latina assumed.

71. Latina was negligent in performing the duty it assumed.

72. Specifically, Latina failed to:

   a. Properly advise Romero as to the policy which would meet his insurance needs, specifically to provide coverage to include Garcia, who Latina knew or should have known was an intended beneficiary Romero intended to insure,

   b. Provide Romero a copy of the policy in Spanish,

   c. communicate to Romero that the insurer defendants engaged in fraudulent and improper insurance practices, by:

      i. routinely violating state law in interpreting its policies not favorably to the insured, as state law required, but favorably to the insurer defendants, and could be expected to do so as to his policy,

      ii. routinely violated state law in using its "undisclosed driver" provision as if its "permissive driver" provision was not also in the policy, and

      iii. routinely violated state law in using its "undisclosed driver" provision as if state law did not apply to define an "insured" as including a relative living in Romero's household.

73. Latina failed to properly elicit from Romero all information Romero needed to provide to the insurer defendants, especially knowing of the improper insurance practices used by the insurer defendants.

74. Latina is liable to Romero and Garcia for all actual and punitive damages assessed by the finder of fact, including all damages proximately caused by Latina's negligence.

**Demand for Jury Trial**

75. Plaintiffs demand a trial by jury.

**Prayer for Relief**

WHEREFORE, Plaintiffs Romero, Garcia request that the court:

a. certify a class as alleged above; and,

b. award declaratory relief to the plaintiffs and the class that the insurer defendants' practices as to "undisclosed driver:"

   i. violate the policy as to any "permissive driver," being an insured; and,

   ii. violate S.C. Code § 38-77-30 for failing to deeming the policy amended to conform to the mandatory definition that an insured includes any relative of a named insured while resident of the same household; and,

   iii. award injunctive relief sufficient to prohibit the insurer defendants from continuing their improper insurance practices; and,

   iv. award attorney's fees as provided by S.C. Code § 38-59-40 or otherwise in equity to the fullest extent of the law; and,

   v. enter judgment jointly and severally as to the defendants as to actual, special, and punitive damages awarded by the finder of fact as to each of the various counts and causes of action; and,

   vi. award pre and post-judgment interest as authorized by S.C. Code § 38-59-240 and grant such other and further relief this Court deems fair and just.

Respectfully Submitted,

s/ James R. Davis
James R. Davis, Esq.
**J. Davis Law Firm, P.C.**
BB&T Plaza Box #16
234 Seven Farms Drive, Suite 211B
Daniel Island, SC 29492
(843) 642-8333 (office)
jim@jdavispc.com

s/ Gregg Meyers
Gregg Meyers, Fed. I.D. No. 4183
217 Lucas Street Unit F-1
Mt. Pleasant SC 29464
843-324-1589
attygm@gmail.com
*Attorneys for the Plaintiffs*

Dated: January 16, 2023