# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| LUIS PACHUCA ROMERO and ANAYELI GARCIA, *each individually and together, on behalf of all others similarly situated as Plaintiff Class*, </br></br>Plaintiffs, </br></br>vs. </br></br>NATIONAL GENERAL INSURANCE COMPANY; INTEGON NATIONAL INSURANCE COMPANY; INTEGON INDEMNITY COMPANY; NATIONAL GENERAL INSURANCE MARKETING, INC.; FUERZA LATINA INSURANCE, LLC; and JOHN DOES NOS. 1–100, </br></br>Defendants. | No. 2:22-cv-04667-DCN </br></br>**ORDER** |

The following matter is before the court on defendants National General Insurance Company ("NGIC"); Integon National Insurance Company, Integon Indemnity Company ("Integon"), National General Insurance Marketing Inc., Fuerza Latina Insurance, LLC, and John Does Nos. 1–100's (collectively, "defendants") motion to dismiss, ECF No. 12. For the reasons set forth below, the court grants the motion, dismisses the first and third causes of action as they relate to first-party coverage with prejudice, and dismisses the remaining causes of action without prejudice.

## I. BACKGROUND

This action involves defendants' alleged wrongful insurance practices when evaluating certain claims submitted by South Carolina drivers who are their insureds. Specifically, the amended complaint alleges, inter alia, that defendants ignore policy

1

provisions that would support coverage, deny coverage on grounds prohibited by state law, and deny first- and third-party claims filed by their policy holders residing in South Carolina, all by wrongfully relying on an "undisclosed operator" provision in their insurance policies. ECF No. 9, Amend. Compl. at 1–2.  Plaintiff Luis Pachuca Romero ("Romero") was a named insured of one of defendants' policies. Id. ¶ 13(d)(i).  Plaintiff Anayeli Garcia ("Garcia") is Romero's daughter and resides in the same household; the complaint alleges that she is both explicitly and implicitly included in the defendants' policy issued to Romero. Id. ¶ 13(d)(ii)–(iii).  Garcia and Romero (in their individual capacities, "named plaintiffs," and together with putative class, "plaintiffs") bring this class action on behalf of similarly-situated policy holders in South Carolina.[1]

Romero was insured under an automobile insurance policy issued by NGIC and underwritten by Integon (the "Romero Policy"). ECF No. 12-2.[2]  The Romero Policy had an effective date of October 9, 2021, and provided coverage for multiple vehicles, including a 2019 Honda CR-V (the "Vehicle"). Id. at 12.  The named insureds under the

---

[1] Defendants filed a motion to strike class allegations, ECF No. 17, after they filed their motion to dismiss, but that motion is rendered moot by this order.

[2] Although plaintiffs did not attach the Romero Policy to the complaint or amended complaint, defendants argue that the court may take judicial notice of the document.  The court agrees.  To be sure, judicial notice should not "be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27, 728 F.3d 354, 360 (4th Cir. 2013) (internal quotation marks and citation omitted).  However, it is equally well established that in considering a Rule 12(b)(6) motion, courts may consider "documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (internal quotation marks and citations omitted).  Here, the Romero Policy is referenced in the complaint, and one would imagine the very policy that plaintiffs allege is inconsistent with South Carolina law would be "incorporated" and "integral" to plaintiffs' complaint.

Romero Policy were Romero and Erika Garcia Rincon. Id. Part D of the Romero Policy contains an "Exclusions" section and, as relevant to the instant motion, excluded coverage for any "[l]oss resulting from the use of any auto by . . . [a]n undisclosed driver." Id. at 53 ¶ 25(b). The term "undisclosed driver" is not defined in the Romero Policy, but the policy defines "undisclosed operator" as a:

1. Family member;

2. Person who resides in your household; or

3. Regulator operator

who is not listed on your Policy at the time of application or within 7 days of becoming a family member, resident of your household, or regular operator.

Id. at 35. The Romero Policy also contains a "WARNINGS" page at the front of the policy which states, in part:

UNDISCLOSED DRIVERS- If a person who resides with you or who is a regular operator of your covered auto(s) is not listed on your declarations page as a driver, coverage may not apply for that undisclosed driver. If you want coverage to apply, you must ask us or your agent to add that person to your policy.

Id. at 29.

On December 18, 2021, the Vehicle was involved in a collision in Summerville, South Carolina. According to the amended complaint, Romero was a passenger in the Vehicle at the time of the collision and Garcia was driving the Vehicle with Romero's permission. Amend. Compl. ¶ 22. After the collision, Romero and Garcia filed timely claims under the Romero Policy. Id. ¶ 27. On December 20, 2021—two days after the collision—defendants denied coverage, citing the fact that Garcia was an "undisclosed operator." Id. ¶ 29; ECF No. 9-1 at 2.

In May 2022, Garcia received a subrogation demand from USAA Casualty Insurance Company ("USAA") to reimburse USAA for losses sustained by its insured in the collision. Amend. Compl. ¶ 31. Then, on or about November 3, 2022, the driver and passengers of the other vehicle involved in the collision sued Garcia in the Berkeley County Court of Common Pleas (the "State Court Action"). Id. ¶ 32. Named plaintiffs of this case sought third-party coverage from defendants of this case, but according to the amended complaint, defendants refused to provide third-party coverage for Garcia "[o]n the same theory [that she was an] undisclosed driver." Id. ¶ 33. Defendants disagree with the claim that they denied third-party coverage to Garcia and, to the contrary, claim they are "currently providing a defense to Garcia in connection with the liability claims against her." ECF No. 12-1 at 8.

On November 18, 2022, plaintiffs filed a class action against defendants in the Berkeley Count Court of Common Pleas. ECF No. 1-1. On December 27, 2022, defendants removed the action to this court. ECF No. 1. On January 3, 2023, defendants filed a motion to dismiss. On January 16, 2023, plaintiffs filed an amended complaint, thereby mooting the first motion to dismiss. Amend. Compl. On February 13, 2023, defendants filed a renewed motion to dismiss the amended complaint. ECF No. 12. Plaintiffs responded to the motion on February 27, 2023, ECF No. 15, and defendants replied on March 6, 2023, ECF No. 16. The court held a hearing on the motion on March 14, 2023. ECF No. 18. As such, the motion is now ripe for the court's review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588

F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

Defendants raise two main arguments in their motion to dismiss. First, defendants argue that plaintiffs have failed to state a claim for breach of contract, breach of good faith and fair dealing, and breach of contract accompanied by fraudulent act. Within that argument, defendants contend that (1) undisclosed drivers like Garcia are not entitled to first-party coverage as a matter of law, and (2) plaintiffs have failed to allege facts

5

showing that defendants failed to provide third-party coverage.[3]  Second, defendants argue that plaintiffs have failed to state a claim for bad faith or improper claims practices. The court addresses each argument in turn.

### A. Breach of Contract

Plaintiffs' first cause of action alleges breach of contract and breach of good faith and fair dealing based on defendants' failure to provide insurance coverage for plaintiffs' property damages and injuries resulting from the vehicle collision, Amend Compl. ¶¶ 42–52, which defendants term "first-party coverage."  Plaintiffs' second cause of action alleges breach of contract and breach of good faith and fair dealing based on defendants' denial of third-party claims made against Garcia. Id. ¶¶ 53–57.  Plaintiffs' third cause of action alleges breach of contract accompanied by fraudulent act. Id. ¶¶ 58–62.  As a preliminary matter, a claim that "another party to the contract has breached the implied covenant of good faith and fair dealing . . . is simply one for breach of contract." Hall v. UBS Fin. Servs. Inc., 866 S.E.2d 337, 342 (S.C. 2021).  Additionally, to prove a claim for breach of contract accompanied by a fraudulent act, a plaintiff must establish a claim for breach of contract. Amason v. PK Mgmt., LLC, 2011 WL 1100169, at *6 (D.S.C. Mar. 23, 2011) (dismissing claim for breach of contract accompanied by a fraudulent act where the plaintiff's breach of contract claim failed).  Accordingly, the court considers the first three causes of action all through the lens of breach of contract.  Finding that

---

[3] As discussed in further detail below, defendants define first-party coverage as the provision of "collision coverage" to the insured for property damage and injuries resulting from a vehicle collision.  ECF No. 12-1 at 5.  In contrast, they define third-party coverage as coverage for "liability to other parties" incurred by the insured.  Id. at 2.

plaintiffs have failed to set forth a cognizable claim for breach of contract, the court dismisses all three causes of action.

### 1. First-Party Coverage

This dispute is essentially the central dispute of the entire case. The amended complaint alleges that defendants breached their insurance policies, including the Romero Policy, by failing to pay policy benefits on the basis of an "undisclosed driver" provision, in violation of S.C. Code Ann. §§ 36-61-10 and 38-77-30. Amend. Compl. ¶ 39, 48. In other words, plaintiffs allege that the "undisclosed driver" provision, as seen in the Romero Policy, violates South Carolina law and is thus unenforceable.

In support, plaintiffs attempt to follow a trail through Title 38, Chapter 77 of the South Carolina Code of Laws, which governs automobile insurance. First, plaintiffs argue that S.C. Code § 38-77-140 provides that an automobile insurance policy may not be issued in South Carolina "unless it contains a provision insuring the persons defined as insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of the vehicle. The term "insured," plaintiffs then note, is defined as:

> the named insured and, <u>while resident of the same household</u>, the spouse of any named insured and <u>relatives of either</u>, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies . . . .

S.C. Code § 38-77-30(7) (emphases added). Additionally, S.C. Code § 38-77-142(A) provides that an automobile insurance policy may not be issued in South Carolina "unless the policy contains a provision insuring the named insured <u>and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured</u> against liability" for death, injury, or loss incurred as a result of

7

negligence. S.C. Code § 38-77-142(A) (emphasis added). Finally, plaintiffs note that any insurance provision "which purports or seeks to limit or reduce" coverage afforded by the above provisions is void. S.C. Code § 38-77-142(C).

In their motion to dismiss and supporting briefs, defendants argue that under South Carolina law, an insurer and its insured are "generally free to contract for exclusions or limitations on coverage." ECF No. 12-1 at 10 (quoting Nationwide Ins. Co. of Am. v. Knight, 858 S.E.2d 633, 635 (S.C. 2021)). Defendants further argue that nothing in the South Carolina statutes cited by plaintiff prohibits an insurer from excluding first-party coverage for losses incurred by an undisclosed driver. They aver that both S.C. Code §§ 38-77-140 and 38-77-142(A) only apply to coverage for liability incurred by the insured (i.e., third-party coverage), but not first-party coverage. ECF No. 16 at 2 & n.2.

Plaintiffs argue that there have been no South Carolina cases recognizing a distinction between first-party coverage and third-party liability coverage. The court disagrees. What plaintiffs really mean is that no South Carolina courts have specifically decided whether S.C. Code §§ 38-77-140 and 38-77-142(A) distinguish "liability" from first-party coverage—and on that point, defendants agree.[4] But importantly, South Carolina courts have, in other insurance contexts, explained that "liability" refers to the need for indemnity. For example, the South Carolina Court of Appeals was previously confronted with a garage insurance policy that included both liability coverage and

---

[4] Defendants cite several cases from other states where the courts determined that a failure to designate a driver in the insured's household as an insured allowed an insurer to deny coverage and/or rescind the policy; however, those cases all concerned different states' laws and are not applicable here. ECF No. 12-1 at 10 (collecting cases from Florida, Pennsylvania, and Georgia).

"garage keepers" coverage, the latter which consisted of comprehensive coverage and collision coverage. BMW of N. Am., LLC v. Complete Auto Recon Servs., Inc., 731 S.E.2d 902, 904 (S.C. Ct. App. 2012). The named insured of the policy in the case was an automobile repair shop that entered into a service agreement with the plaintiff, BMW, to provide washing and maintenance services for a fleet of BMW vehicles. Id. at 905. BMW was not a named insured on the policy but was instead added to the policy by an endorsement providing BMW with "only liability coverage." Id. at 906. After a rainstorm caused damages to six BMW vehicles at the service shop, BMW sought coverage from the defendant-insurer. The South Carolina Court of Appeals affirmed the decision of the trial court, holding that BMW was not afforded comprehensive coverage under the policy. Id. The court reasoned that "[b]ecause BMW is only an insured as to liability coverage under the Policy, for [the insurer]'s duty to pay BMW as an insured to be triggered, BMW must have first been liable to some third party." Id. In reaching that holding, the court relied in part on the dictionary definition of "liability," which defined the term as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another." Id. at 906–07 (citing Black's Law Dictionary 997 (9th ed. 2009)). Other South Carolina courts have reached similar conclusions. See, e.g., Trancik v. USAA Ins. Co., 581 S.E.2d 858, 861 (S.C. Ct. App. 2003) ("Third-party-liability-insurance contracts are generally indemnity contracts whereby the insurer, or the first party, agrees to pay the insured, or the second party, the amount of any damages the insured may become legally liable to pay a third party.").

       Those rulings cement this court's interpretation that the word "liability" in the South Carolina Code of Laws refers to coverage against third parties. This view of the

9

meaning of "liability" makes practical sense, too.  After all, South Carolina law does not mandate first-party coverage for automobile insurers.  Section 38-77-280, titled "Collision coverage; comprehensive coverage," provides in part: "Any automobile insurer <u>may, at its own election</u>, make collision coverage and either comprehensive or fire, theft, and combined additional coverage available to an insured or qualified applicant who requests the coverage at such rates and under such rules as have been approved by the director."  S.C. Code § 38-77-280(A) (emphasis added).  Therefore, it must be presumed that the General Assembly was deliberate about using the word "liability" in S.C. Code §§ 38-77-140 and 38-77-142(A)—the statutes that plaintiffs now cite.  In other words, when § 38-77-140 states that an automobile insurance policy must insure persons defined as insured "against loss from the liability imposed by law," the provision only requires that insurance be provided for third-party claims.

Even if those cases—and the supporting reasoning—were somehow not persuasive, the court finds support for its conclusion in the public policy of S.C. Code § 38-77-140.  The policy supporting the Motor Vehicle Financial Responsibility Act ("MVFRA")—which is found in Chapter 9, Title 56 of the South Carolina Code of Laws—has been applied to the provisions at issue in Chapter 77.  <u>See</u> <u>Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co.</u>, 753 S.E.2d 437, 440 (S.C. Ct. App. 2013) (applying the MVFRA to S.C. Code §§ 38-77-220 and 38-77-340)).[5]  The MVFRA was intended "to give greater protection <u>to those injured</u> through the negligent operation of automobiles."

---

[5] Although <u>Lincoln General</u> appears to be analogous—there, the court determined that an insurer did not owe liability coverage stemming from an accident where the insured vehicle was being driven by an excluded driver—third-party coverage and the excluded-driver provision in S.C. Code § 38-77-340 are not at issue in this case.  753 S.E.2d at 438–39.

Williams v. Gov't Emps. Ins. Co., 762 S.E.2d 705, 712 (S.C. 2014) (citing Pa. Nat'l Mut. Cas. Ins. Co. v. Parker, 320 S.E.2d 458, 461 (S.C. Ct. App. 1984)) (emphasis added). According to defendants, this public policy is reflected in the idea that the term "insured" was broadly defined to safeguard coverage for innocent third parties who are injured as a result of the negligence of a relative or other unnamed driver. ECF No. 16 at 2–3. Defendants argue, accordingly, that the MVFRA did not mean to extend such broad coverage to include, for example, first-party coverage for a negligent unnamed driver.

The court finds this reasoning convincing. The MVFRA's focus on "greater protection to those injured"—coupled with the fact that first-person coverage is not mandatory—suggests that the MVRA does not require motor vehicle insurance policies provide all forms of coverage, including first-party coverage. Plaintiffs, however, read the MVFRA differently. Plaintiffs argue that in Williams and other similar cases analyzing the MVFRA, courts have found that a policy provision may not unilaterally and artificially reduce coverage below the statutory amount. But Williams—at least for the proposition that plaintiffs cite it for—is inapplicable here. In Williams, the South Carolina Supreme Court held that a policy containing a family step-down provision was against public policy and violated S.C. Code § 38-77-142(C). 762 S.E.2d at 715. There, after a husband and wife were killed in a car accident in a car covered by GEICO's insurance policy, GEICO took the position that it only owed $15,000, rather than the stated liability policy amount of $100,000, because of a provision that reduced coverage to the statutory minimum when the injured party was a family member of the insured. Id. at 708. The court held that the family step-down provision violated public policy because

it conflicted with the plain language of § 38-77-142 and was injurious to the public welfare. Id. at 715.

Here, however, the "undisclosed operator" provision in the Romero Policy does not conflict with a statutory scheme or public policy in the same way that the family step-down provision did in Williams. Notably, the automobile policy in Williams specified that the husband and wife were both named insureds, id. at 708, whereas here, the Romero Policy specifically omits coverage for Garcia, the family member. GEICO could not avoid claiming that the wife was an insured, and the Williams court held that once such coverage was in place, the "step-down provision [] plainly contravene[d] [§ 38-77-142(C)] because it reduce[d] the amount of coverage stated in the declarations page." See id. at 713; see also id. at 715 ("After agreeing on a policy with $100,000 in stated liability coverage for the named insureds, GEICO should not be permitted to subsequently reduce it with what it deems an 'exclusion' in the policy."). The Romero Policy differs because it states from the outset that no undisclosed person who resides with the operator is covered. ECF No. 12-2 at 29. In other words, the undisclosed operator provision does not purport to limit coverage that the parties contracted for; it provides no such coverage for Garcia at all. Altogether, the court finds that South Carolina law does not prohibit clear statements excluding coverage like the undisclosed operator provision found in the Romero Policy. Since the court reaches this conclusion strictly as a matter of law and not fact, dismissal of plaintiffs' first and third causes of action with prejudice is proper at this stage.

### 2. Third-Party Coverage

As reflected above, defendants concede that at minimum, liability coverage—which they properly equate to third-party coverage—must be provided to "insureds," which is defined to include relatives who are residents of the same household. S.C. Code § 38-77-30(7). Defendants argue, however, that plaintiffs "allege nothing more than conclusory assertions that [d]efendants denied them third-party benefits." ECF No. 12-1 at 11. In fact, defendants argue that they are currently providing plaintiffs with third-party coverage by providing Garcia with a defense in the State Court Action. Id. at 12. In support, defendants produce a notice of appearance entered in the State Court Action purportedly showing that an attorney provided by NGIC entered an appearance on behalf of Garcia.[6]

Plaintiffs conceded at the hearing that NGIC is providing Garcia with a defense in the State Court Action. Nevertheless, they argue—as they did in their reply—that the defense was only provided after counsel for plaintiffs had entered an appearance in the State Court Action, suggesting that NGIC acted "belatedly." See also ECF No. 15 at 1 (arguing that defendants failed to "provide coverage benefits when due and [] promptly settle the claim"). Assuming a delay in providing coverage could somehow constitute a coverage denial—and there is nothing to suggest that is the case, particularly because the

---

[6] Had the court relied solely on the exhibit, the court may have been skeptical of granting the motion to dismiss. Defendants argue that the court may take judicial notice of the notice of appearance without converting the proceedings to one for summary judgment because the notice of appearance is a public record. ECF No. 12-1 at 12 n.10. Even assuming that is the case, the exhibit merely shows that an attorney, Hunter Lawrence Windham ("Windham"), entered a notice of appearance. The exhibit does not show that Windham was hired by NGIC, as defendants claim, or that Windham would be defending Garcia. ECF No. 12-3. Nevertheless, for the reasons discussed below, the court finds dismissal without prejudice warranted.

13

notice of appearance shows that an appearance was entered well within thirty days of service of the complaint—plaintiffs did not allege facts regarding the purported delay in the amended complaint. In fact, the amended complaint merely alleges that defendants "wrongfully denied those third-party claims as to . . . the duty to defend Garcia and Romero." Amend. Compl. ¶ 55. Even if the court overlooked plaintiffs' concession at the hearing, the amended complaint alleges no factual matter[7] to support the conclusory statement that defendants denied them third-party coverage. Accordingly, the court grants the motion to dismiss the second and third causes of action as they relate to third-party coverage, but unlike for plaintiffs' first-party coverage claims, such dismissal is without prejudice.

### B. Bad Faith

Plaintiffs' fourth cause of action alleges (1) bad faith refusal to pay and (2) improper claims practices. Amend Compl. at 14. Defendants move to dismiss the fourth cause of action by addressing each claim individually, and the court analyzes each in the same way.

#### 1. Bad Faith Refusal to Pay

The elements of bad faith refusal to pay are: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." Crossley v. State Farm

---

[7] As defendants observe, plaintiffs attached the denial letter as an exhibit to the amended complaint, but in the letter, Integon solely denied collision (first party) coverage and did not deny third-party coverage. ECF No. 16 at 6 n.5 (citing ECF No. 9-1 at 2).

Bureau Cas. Ins. Co., 415 S.E.2d 393, 396–97 (S.C. 1992) (citation omitted).  Defendants argue that here, the second element is not met because defendants did not refuse to pay any benefits that were due under the Policy.  The court agrees.  Since it found above that defendants were entitled to deny coverage for "undisclosed operators" as a matter of law, there was no wrongful refusal by defendants to pay benefits due under the Romero Policy.  Therefore, the court grants the motion to dismiss the bad faith failure to pay claim without prejudice.

### 2.  Improper Practices

Defendants argue that that the improper practices claim is subject to dismissal for the same reason articulated under the bad faith failure to pay claim, but they further argue that an independent basis exists to support dismissal.  In the amended complaint, plaintiffs allege that defendants engaged in improper insurance practices in violation of S.C. Code §§ 38-59-20 and 38-59-230.  Amend. Compl. ¶ 64(f).  That chapter is referred to as the Improper Claims Act (the "Act"), and as defendants correctly note, it contains no private right of action.  ECF No. 12-1 at 14.  As South Carolina courts have carefully explained, the Act provides relief for a third-party victim of an improper claims practice by allowing the third party to "pursue administrative action before the Chief Insurance Commissioner."  Gaskins v. S. Farm Bureau Cas. Ins. Co., 541 S.E.2d 269, 272 (S.C. Ct. App. 2000).  Critically, "[t]he Act does not create a private cause of action."  Id. (citing Swinton v. Chubb & Son, Inc., 320 S.E.2d 495, 496 (S.C. Ct. App. 1984)).  "A cause of action for wrongful adjustment under section 38-59-20 only entitles [a third party] to an administrative remedy."  Id.  Plaintiffs do not respond to the argument, and no response

15

would have been likely to tip the scales.  The court grants the motion to dismiss plaintiffs' claim for improper insurance practices with prejudice.[8]

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss. Plaintiffs' first and third causes of action as they relate to first-party coverage and fourth cause of action as it relates to improper claims practices are dismissed with prejudice. Plaintiffs' remaining causes of action are dismissed without prejudice.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 23, 2023**
**Charleston, South Carolina**

---

[8] Plaintiffs' fifth cause of action alleges negligence against Fuerza Latina Insurance, LLC ("Fuerza Latina").  Amend. Compl. ¶¶ 67–74.  According to defendants, Fuerza Latina was never served with a summons and complaint.  ECF No. 1 at 3 n.2. Plaintiffs have not indicated otherwise, and in part for efficiency, the court dismisses the fifth cause of action without prejudice, thus resulting in dismissal of the complaint in its entirety.